IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY FLORIDA

RUFUS LOVELL BROOKS,

    Plaintiff

Vs.

AMPCUS, INC.

    Defendant

CASE NO:

VERIFIED COMPLAINT FOR COMPENSATORY, ASSUMED, AND PUNITIVE DAMAGES:

**JURY TRIAL DEMAND**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Rufus Lovell Brooks ("BROOKS"), acting pro se, files this Verified Complaint for breach of contract against a unscrupulous staffing agency, Defendants, Ampcus, Inc., and its employees, and alleges as follows:. This complaint was original filed in this court as Rufus Lovell Brooks, vs Ampcus, Inc. CET al on February 23, 2023, case number 2023-CA-001665-O. On a motion by the Defendants, the case was moved to federal court on April 3, 2023, case number 6:23-cv-00613-CEM-DCI. On May 2, 2023 the case was dismissed without prejudice; this complaint is timely filed.

## JURISDICTION, VENUE AND PARITES

1. This is an action for Breach of Contract involving damages in excess of $15,000, exclusive of interest, costs and attorney's fees.
2. Venue and Jurisdiction are proper in this Honorable Court as this is an action for breach of contract seeking permanent injunctive relief and an award of money damages, including actual damages and reasonable attorneys' fees and costs; an award of compensatory damages.
3. Venue is deemed proper in this District pursuant to section 47.011, Florida Statutes because a substantial part of the events giving rise to this action took place within the jurisdiction of this Court, namely, that the Agreements entered into between Plaintiff and Defendants mandates that an action be commenced within the District Court of Florida.
4. Venue is proper in this Court because Plaintiff is a resident of the city of Orlando, Florida, which is located within Orange county of Florida.
5. The Court has jurisdiction over the Defendant, Ampcus, Inc. pursuant to Florida Statute §§ 48.193(1) (a), (f) (1). (2.), (g), (2) and/or by voluntary submission.
6. Defendant, Ampcus Inc. is a corporation, registered as a corporation in the State of Virginia.
7. Defendant, Ampcus, Inc. principal place of business is located at 14900 Conference Center Dr, Suite 500, Chantilly, VA.
8. Defendant, Ampcus, Inc. has an office in Jacksonville, Florida and conduct business in the State of Florida, providing telecommunication staffing services in the State of Florida.

## **STATEMENT OF THE FACTS**

9. Plaintiff, Rufus Brooks is a telecommunications construction/project manager, with a college degree and, with over thirty years of telecommunications experience.

10. From 2000 to the present, Plaintiff worked as a Project manager and, as a Construction Manager, managing construction cellular projects throughout the United States.

11. Over that time period, Plaintiff worked as a contractor for many of the major wireless carrier and their general contractor's including AT&T, Verizon, T-Mobile, Sprint, Ericsson and Nokia.

12. The wireless carriers and their general contractors utilized staffing agencies to supply them with contractors for construction and project manager jobs as needed.

13. The jobs are well paid jobs and require a high school education at a minimum. Over eighty percent of the jobs are held by white males with only a high school education at best.

14. Among the staffing agencies supplying contractors for the carrier and their general contractors are Ampcus, Inc., eTeam, Inc., GBC Services, Fusion Solution, Inc. and Brooks, Inc.

15. Many of the staffing agencies, including Ampcus, Inc., GBC Services, eTeam, Inc., Fusion Solution, SWI, Inc. and Brook, Inc., required the contractors to sign "right to represent" agreements ("RTR"), which gives the agencies the exclusive rights to represent the contractors to the carriers or general contractors for jobs.

16. The terms, length and conditions of the "RTR" agreements vary, some are for one specific job and some are for a specific period of time.

17. Contractors applying for jobs with Ericsson are required by Ericsson, to give the staffing agencies a thirty days "RTR" agreement.

18. When a contractor applies for a job with Ericsson, Ericsson will e-mail the contractor, and request the contractor to confirm that they have a "RTR" agreement with the staffing agency.

19. The confirmation is for the right to represent the contractor to Ericsson only, the contractor has no confirmation of any jobs that the staff agency may have submitted him/her to.

20. The other major wireless carrier and their general contractor's including AT&T, Verizon, T-Mobile, Sprint, and Nokia do not require the contractors to sign "RTR" agreements; although, the staffing agencies requires it.

21. When contractors apply for jobs with companies other than Ericsson, they have no way of

knowing if they were submitted or not and have to rely on the recruiters.

22. Most of the staffing agencies and their clients including AT&T, Verizon, T-Mobile, Sprint, and Nokia utilize online portals like SAP/Field Glass, Tapfin, and others for submitting contractors for jobs.

23. Although the staffing agencies receive notice of the submittals, they do not share them with the contractors.

24. Signing a "RTR" agreement is a major concern for most contractors because they are forced to trust and rely on the recruiter for a job.

25. In general, contractors believe most staffing agencies and their recruiters are honest and have integrity; however, there are many unscrupulous staffing agencies and their recruiters out there and the Defendant belong in that group.

26. Some recruiters collect resumes and "RTR" agreements like candy, and use them to manipulate the contractors for financial exploitations, and for personal reasons.

27. It is common practice for some recruiters to hold a contractor resume and submit someone else for the job because that person was asking for a lower rate.

28. The contractor is not aware that his/her resume is being held by the recruiter and, because they have signed a "RTR" agreement with the agency, they are legally stuck with the agency and have no chance for the job with another agency.

29. Recruiter often post fake jobs collect resumes just for adding them to their database; they solicit contractors about a nonexistent job opening and get the contractors to send them their resumes and sign a "RTR" agreement which make the contractor legally bind to them. This despicable practice is called "resume harvesting" and most of the staffing agencies are engaging in it.

30. Recruiters collects and hold contractor resumes for other reason also; including, financial gains, a candidate's marketability, race, gender, politics, and for personal reason.

## FACTUAL ALLEGATIONS

31. From 2019 until the present, Plaintiff contracted with Defendant, Ampcus Inc. for jobs with its clients, Verizon, and Ericsson.

32. During that time frame, the Defendant's employees, Karan Jadhav, Rishab Srivasta Shruthi Rekilge Hussain Mohammed, Aneesh Nair, Mukul Patil, Waheed Khan, Claton Lazarus,

4

Paras Shardul, Dinesh Solanki and others, solicited and encouraged Plaintiff to apply to hundreds of jobs with its clients, Ericsson and Verizon.

33. During that time frame, Plaintiff agreed to a "RTR" agreement, and asked the Defendant's employees to submit him to hundreds of those jobs with its clients, Ericsson and Verizon.

34. During that time frame, the Defendant's employees confirmed to the Plaintiff that they had submitted him to hundreds of jobs with its clients, Ericsson and Verizon.

35. During that time frame, Plaintiff was not selected for interviews or hired for any of the hundreds of jobs that the Defendant's employees claimed they had submitted him to.

36. Upon reasonable information and belief, for at least five (5) years prior to the filing of this Complaint, Plaintiff alleges that Defendants, Ampcus, Inc. have willfully and intentionally failed to represent Plaintiff for jobs with its clients Ericsson, and Verizon as agreed.

37. On or about May 15, 2022, to the present, Plaintiff, Rufus Brooks enter into ten RTR ('right to represent agreements") with Defendants, Ampcus, Inc. and Anjali Ramakumaran for jobs with its client Ericsson. A copy of the most recent agreement entered into, dated 12-28-2022 is attached as Exhibit "A".

38. During that time frame, Plaintiff did not receive an interview or job offer from any of those submissions.

39. Although the Defendants employees agreed to submit Plaintiff to its client Ericsson for the jobs, they did not submit him as agreed.

40. During that time frame, Defendants received "RTR" agreements from Plaintiff for those submissions.

41. The defendants led Plaintiff to believe that they had submitted him for those jobs, legally blocking him from being submitted for those jobs by other staffing agencies.

42. Plaintiff expressed concern to Defendants as to why he was unable to find employment with Ericsson, and requested feedback.

43. The Defendants did not provide Plaintiff with any feedback.

44. Plaintiff contacted Ericsson and discovered that the Defendants had not submitted Plaintiff for the jobs with its client Ericsson as they claimed, and, they had intentionally misled Plaintiff regarding his submissions for jobs with its client Ericsson.

45. Upon information and belief, Plaintiff alleges that, after receiving "RTR" agreements from Plaintiff the Defendants failed to submit Plaintiff to jobs with its client Ericsson as agreed.

46. Upon reasonable information and belief, Plaintiff alleges that, after receiving "RTR" agreements from Plaintiff, the Defendant failed to submit Plaintiff to jobs he had applied for with its client Ericsson for financial reasons.
47. Upon reasonable information and belief, Plaintiff alleges that, after receiving "RTR" agreements from Plaintiff, the Defendant, failed to submit plaintiff to jobs he had applied for with its client Ericsson because of Plaintiff's race.
48. Upon reasonable information and belief, Plaintiff alleges that, after receiving "RTR agreements from Plaintiff, the Defendant, failed to submit Plaintiff to jobs he had applied for with Ericsson because of Plaintiff's age.
49. The Defendants, intentionally, willfully, wantonly and maliciously held Plaintiff's resume and failed to submit Plaintiff for jobs with its client Ericsson as agreed.
50. On or about May 15, 2022, to the present, Plaintiff, Rufus Brooks enter into ten RTR ('right to represent agreements") with Defendants, Ampcus, Inc. for jobs with its client Verizon. A copy of the most recent agreement entered in to, dated 12-1-2022 is attached as Exhibit "B".
51. During that time frame, Plaintiff did not receive an interview or job offer from any of those submissions.
52. Although the Defendants employees agreed to submit Plaintiff to its client Verizon for the jobs, they did not submit him as agreed.
53. During that time frame, Defendant' employees received "RTR" agreements from Plaintiff for those submissions.
54. The defendant's employees led Plaintiff to believe that they had submitted him for those jobs, legally blocking him from being submitted for those jobs by other staffing agencies.
55. Plaintiff expressed concern to Defendants as to why he was unable to find employment with its client Verizon, and requested feedback.
56. The Defendants did not provide Plaintiff with any feedback.
57. Plaintiff contacted Verizon and discovered that Defendant had not submitted Plaintiff for the jobs with its client Verizon as they claimed, and they had intentionally misled Plaintiff regarding his job submissions to its client Verizon.
58. Upon reasonable information and belief, Plaintiff alleges that, after receiving "RTR" agreements from Plaintiff, the Defendant failed to submit Plaintiff to jobs he had applied for with its client Verizon for financial reasons.
59. Upon reasonable information and belief, Plaintiff alleges that, after receiving "RTR" agreements from Plaintiff, the Defendants, failed to submit plaintiff to jobs he had applied for

6

     with it client Verizon because of Plaintiff's race.

60. Upon reasonable information and belief, Plaintiff alleges that, after receiving "RTR" agreements from Plaintiff, the Defendant, failed to submit plaintiff to jobs he had applied for with its client Verizon because of Plaintiff's age.

61. The Defendant's employees, intentionally, willfully, wantonly and maliciously held Plaintiff's resume and failed to submit Plaintiff for jobs with its client Verizon as agreed.

## COUNT I
### (Breach of Contract as to Ericsson)

62. This is an action for breach of Contract which resulted in damages that exceed $15,000.00 exclusive of interest, attorney's fees and cost, against Defendants, Ampcus Inc.

63. Plaintiff incorporates and realleges paragraphs 1 through 61 as if fully set forth herein.

64. On or about May 15, 2022, to the present, Plaintiff, Rufus Brooks enter into ten ('right to represent agreements") with Defendants, Ampcus, Inc. for jobs with its client, Ericsson.

65. The most recent agreements are attached as Exhibit "A".

66. Plaintiff gave the Defendants exclusive rights to represent him to Ericsson for jobs with their organizations.

67. Plaintiffs paid consideration to Defendant by agreeing not to allow other agencies to submit him for those jobs.

68. The "right to represent" agreements were valid, binding and enforceable contracts between the parties.

69. Defendants breached the contracts by not representing and submitting Plaintiff for jobs with its client, Ericsson as agreed.

70. The Defendant knew or should have known that its employees had breached its contracts with Plaintiff by not representing and submitting Plaintiff for jobs with its client, Ericsson as agreed.

71. As a direct and proximate result of Defendant's' breach, Plaintiff has been harmed, and has suffered irreparable damages.

72. As a direct and proximate result of the Defendants' misconduct, Plaintiff is entitled to compensatory, special, and punitive damages in an amount to be proven at trial.

## COUNT II
### *(Intentionally Breached of Contract as to Ericsson)*

73. Plaintiff incorporates and realleges paragraphs 1 through 61 as if fully set forth herein.

74. Plaintiff and Defendants willing entered into the contracts.

75. The Defendant, Ampcus Inc. knowingly, intentionally, and willfully breached those contracts by not representing Plaintiff for jobs with its client Ericsson as agreed.

76. The Defendant's failure to represent Plaintiff for jobs with its client Ericsson as agreed was unjustifiably, "and "rendered with a malicious purpose.

77. For years the Defendant lied, and led Plaintiff to believe that they were representing him for jobs with its client its client Ericsson.

78. The Defendant's knowingly, intentionally and unjustifiably enters into "right to represent" agreements with Plaintiff under false pretense, which gave them control of his job submissions to its client its client Ericsson.

79. The Defendants' conduct was committed knowingly, intentionally, willfully, wantonly, maliciously, and attended by such malice, insult and abuse with the intent to harm Plaintiff, or in blatant disregard of the substantial likelihood of causing him harm, thereby entitling Plaintiff to an award of punitive damages.

80. As a direct and proximate result of the Defendants' misconduct, Plaintiff is entitled to compensatory, special, and punitive damages in an amount to be proven at trial.

## COUNT III
### *(Breach of Contract as to Verizon)*

81. This is an action for breach of Contract which resulted in damages that exceed $75,000.00 exclusive of interest, attorney's fees and cost, against Defendants, Ampcus Inc.

82. Plaintiff incorporates and realleges paragraphs 1 through 61 as if fully set forth herein.

83. On or about May 15, 2022, to the present, Plaintiff, Rufus Brooks enter into ten ('right to represent agreements") with Defendants, Ampcus, Inc. for jobs with its client Verizon.

84. The most recent RTR agreements are attached as Exhibit, "B".

85. Plaintiff gave the Defendant exclusive rights to represent him to its client Verizon, for jobs with their organization.

8

86. Plaintiffs paid consideration to the Defendants by agreeing not to allow other agencies to submit him for those jobs.
87. The "right to represent" agreements were valid, binding, and enforceable contracts between the parties.
88. The Defendants breached the contracts by not representing and submitting Plaintiff for jobs with its client Verizon as agreed.
89. As a direct and proximate result of Defendant's' breach, Plaintiff has been harmed and has suffered irreparable damages.
90. As a direct and proximate result of the Defendants' misconduct, Plaintiff is entitled to compensatory, special, and punitive damages in an amount to be proven at trial.

## COUNT IV
*(Intentionally Breached of Contract as to Verizon)*

91. Plaintiff incorporates and realleges paragraphs 1 through 61 as if fully set forth herein.
92. Plaintiff and Defendant willing entered into the contracts.
93. The Defendant, Ampcus Inc. knowingly, intentionally, and willfully breached those contracts by not representing Plaintiff for jobs with its client, Verizon as agreed.
94. The Defendant's failure to represent Plaintiff for jobs with its client, Verizon as agreed was unjustifiably, "and "rendered with a malicious purpose.
95. For years the Defendant lied and led Plaintiff to believe that they were representing him for jobs with its client Verizon.
96. The Defendant's knowingly, intentionally and unjustifiably enters into "right to represent" agreements with Plaintiff under false pretense, which gave them control of his job submissions to its client Verizon.
97. The Defendants' conduct was committed knowingly, intentionally, willfully, wantonly, maliciously, and attended by such malice, insult and abuse with the intent to harm Plaintiff, or in blatant disregard of the substantial likelihood of causing him harm, thereby entitling Plaintiff to an award of punitive damages.
98. As a direct and proximate result of the Defendants' misconduct, Plaintiff is entitled to compensatory, special, and punitive damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff, Rufus Lovell Brooks, demands judgment against Defendants, Ampcus, Inc. as follows:

    A. An award of, compensatory, punitive, special, and other damages in appropriate amounts to be established at trial;

    B. Such other and further relief as the Court deems just and appropriate to protect Plaintiff's rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted on Date: August 14th, 2023    Rufus Lovell Brooks, Acting pro se
14016 Myrtlewood Drive
Orlando, Florida 32832
Tel: (407) 407-8123
Email: brooks.rufus@yahoo.com

HOME MAIL NEWS FINANCE SPORTS ENTERTAINMENT LIFE SEARCH SHOPPING YAHOO PLUS MORE... Downloac

Shruthi Rekilge Add keywords Advanced

Compose

Back Archive Move Delete Spam •••

Inbox 37K
Unread
Starred
Drafts 881
Sent
Archive
Spam
Trash
Less

Views Hide
Photos
Documents
Emails to myself
Subscriptions
Travel

Folders Hide
+ New Folder
-Boxbe Waiting... 19K
westower 5

I Confirm.

Rufus Brooks

On Wednesday, December 28, 2022 at 11:22:44 AM EST, Shruthi Rekilge <shruthi.rekilge@ampcus.com> wrote:

Hello Rufus,

Hope you are doing great.

It was nice talking to you. As discussed, We need your acceptance email on the below. Please Acknowledge us by Replying (I **Accept** / **I Confirm**).

I **Rufus L Brooks,** As per our discussion I am going ahead and presenting your candidature to **Construction Manager - Orlando** With **Job ID : 54228** for our direct Client **Ericsson** per the following details. This is to confirm that "I **Rufus L Brooks**, has authorize **Ampcus** on job for the position listed at an Weekly Pay Rate of " **($42/Hour) on W2**"

Further would like to add that **Ampcus** informed me about this opportunity. I assure you that I will not authorize any other sup submit my resume for this particular opportunity.

I understand that **Ampcus** is the sole supplier representing me on this position and by way of this document I certify that I am currently being represented by another agency for this at **Ericsson**

I also authorize **Ampcus** to conduct a Background Check & Drug Screening Process if I Selected for this opportunity.

**Kindly Share your Updated Word Document Resume along with Below details:**
**Full Legal name:**
**Phone #:**
**Mobile#:**
**Email address:**
**Present Location:**
**DOB(MM/DD):**
**Availability to join:**
**Interview Availability:**
**Visa Status:**

Thanks & Regards,
**Shruthi**

HOME MAIL NEWS FINANCE SPORTS ENTERTAINMENT LIFE SEARCH SHOPPING YAHOO PLUS MORE... Downloac

Find messages, documents, photos or people Advanced

Compose

Back Archive Move Delete Spam

Inbox 37K
Unread
Starred
Drafts 881
Sent
Archive
Spam
Trash
Less

Views Hide
Photos
Documents
Emails to myself
Subscriptions
Travel

Folders Hide
+ New Folder
-Boxbe Waiting... 19K
westower 5

Re: RTR - the role of Engineer- Construction - II based at Schertz, TX -VZGTJP00045530 Yah

**Rufus Brooks** <brooks.rufus@yahoo.com> Thu, Dec 1, 2022 at
**To:** Aneesh Nair

I agree.

Rufus Brooks

On Thursday, December 1, 2022 at 01:13:50 PM EST, Aneesh Nair <aneesh.nair@ampcus.com> wrote:

**Hello Rufus,**

As Per our conversation, please acknowledge below statement of right to represent to confirm your submission to **Verizon** by replying to this email as "Agr "Confirmed".

**I " Rufus L Brooks"** give **(Ampcus Inc. ),** the exclusive right to represent my profile to **Verizon** for the capacity of Position _ **Engineer- Construction - II** a **Schertz, TX (# VZGTJP00045530)**

As per our conversation, please confirm the hourly pay rate of **$ 55 /hr. W2** for position if hired.

**Please confirm and help me with below details and attach an updated resume.**

| | |
|---|---|
| **Legal First & Last Name**: | **Rufus Brooks** |
| **DOB (MM/DD):** | **09/08** |
| **Work Authorization:** | **USA** |
| **Comfortable to relocate to Schertz, TX upon offer** | **YES** |
| | **FL** |

This position require successful completio 5 years of employme education and crimin check and drug test joining the project, w be comfortable for th checks if selected fo position **(Yes/No):**



